Good morning. We have four argued cases today and one submitted case. And our first case is number 2010-1260 NRE MOSTAFAZADEH. Am I pronouncing that correctly? You have it correct. Mr. Byer. Thank you. May it please the court, my name is Steve Byer. I represent the appellant in this case, Mostafazadeh, and joining me at the table is co-counsel Ed Van Keesen. The present appeal relates generally to the application of the reissue recapture rule. The appellant seek review and reversal of a decision by the Patent Office's Board of Appeal affirming the examiner's all of the claims, all of the new claims of a reissue application under the reissue recapture doctrine. Could I see if I understand this correctly? As I understand it, the claims were narrowed by the addition of the circular attachment pad limitation during the original prosecution. That's correct. And now that that limitation is being deleted, and you say that that's permissible because the claim is being narrowed in another respect, which is the addition of the bus bar limitation. Specifically, that is correct, except it's not just the fact that we're adding the bus bar limitation, it's the fact that the bus bars are exposed on the bottom surface of the package. Whatever those limitations are, those are the narrowing limitations. That's correct. Now, I have a preliminary question, which is whether it was appropriate to move the statute providing for re-examination covers this situation. The statute says there has to be, in effect, an inadvertent error, that something was either left out or put into the application that shouldn't have been put in. Well, what we have here is it was in the application, and then it was taken out. And I don't see how you can say in that situation it was inadvertently left out. I'd like you to address how the statute, the re-examination statute, covers this situation where something is originally in the patent, and then in order to meet a prior art reference, you say, well, we'll take it out, and now you want to put it back in again. That doesn't seem to me to be the kind of situation that the statute was intended to cover. Certainly, and I think the important issue from our perspective is what were we trying to do? The original claims in the application were directed at a lead frame, a lead frame having basically three elements. Leads, the bus bars, and a diet tax platform. In the first office action, the examiner found some very good prior art, which we fully acknowledge anticipated claim one. Completely wiped out the claims that were originally presented. And as you say, those were directed at the bus bar feature. What the prosecuting attorney did at that point was they narrowed the claims towards an alternative feature that was described in the application, and that was the circular patch. And what I think Judge Friedman is saying is that wasn't inadvertently. It was ever. Certainly, it was a conscious decision to make that a minute. We don't question that at all. What you're trying to get put back into the patent now was in the patent originally, wasn't it? No, it was not. It was not at all. It was not claimed at all. The features that were distinguishing the point that we think is very important is the fact that the bus bars are exposed on the bottom surface of the package. That was a very, very, very different configuration. In contrast, if you look at our description, we described two different embodiments. One of the embodiments was what you call a leaded embodiment, where the leads, where the electrical connection between the die and the outside world was all through leads. There was a bus bar, but again, the connections were made through leads. That was exactly the same as the examiner found in the prior art, particularly the Kawakami reference. What the error was, what the prosecuting query missed, was the significance of the feet of the second embodiment that's described in the application, and that was where the bus bars were exposed on the bottom surface of the package. That distinction we think is a very important one, and indeed it's a patentable one. The examiner was very clear from the record that the examiner understood that in the packaging arts that distinction was very, very significant. If you look at the claims as originally filed, none of the claims as originally filed were directed at the feature of the exposed bus bars. What we submit as the error was that the prosecuting attorney did not appreciate the significance of the feature, and he didn't take the claims in that direction. You're stating it a little differently. You're saying the prosecuting attorney shouldn't have used this method of avoiding the prior art. He or she should have used some other method. That's basically what you're saying, that he made a mistake in judgment in putting this in rather than some other method. No question that's true. I won't necessarily that it was a mistake going in this direction because the direction he went was certainly an acceptable direction. What the mistake was was failing to appreciate that there was an alternative. It was a prosecution error. It's the type of error that occurs all the time in prosecution of patent applications. We believe that is a correctable error under reissue. Are there any cases which have said it's a correctable error where you disagree with the judgment of the attorney as to how to present the case? The case that we believe is on all fours, as close as you can get to all fours, is the opinion by Judge Rich. It was a CCPA decision. In that particular case, the court pointed out that there is a very important point, which is the pertinent question in reissue and capture is whether the claims are the same scope as the cancelled claims, not whether they lack some specific recitation that was cancelled from the cancelled claims but included in the patent claims. The court found, much like in this case, that each of the appealed claims is more restrictive in at least one significant respect than the cancelled claims and therefore the patentee was not seeking to recapture the same subject matter that was sought in the cancelled claims. According, the court found there was no basis for estoppel. With respect to the error requirement, which is really directly getting at your point, the court found while the applicant acted deliberately in making the amendment, he did so in error. The court also found that the error in prosecution judgment can only be regarded as an error without any deceptive intention within the terms of 35 U.S.C. 251. Again, that's in Ray Richmond. I don't have the exact site in front of me, but it is certainly In reading your brief and then the government's brief, I'm trying to figure out exactly where the issue joins. So I guess I'd like your take on it. Is the difference between you and the government that they're saying that you can't go beyond the critical limitation? I mean, they talk about a critical limitation. So is the question whether or not you can between what you're advocating and what the government's position is? We believe there are two fundamental differences between our position and the government's position. One is under the third step of the recapture analysis is there's a determination of whether the claims are materially narrowed in other respects. And certainly it is our position that the narrowing, the features that are added in the reissued claims, 1123 for example, where we're talking about the bus bars being exposed on the bottom surface of the package are material narrowings. And the patent office view, there cannot be a material narrowing if the claims are directed at the same embodiment as the claim from the original patent. But under our cases, there's a question of whether the narrowing has to relate to the originally surrendered subject matter or whether it can relate to some other feature such as here at the bus bar, right? That seems to be an issue under our cases as to whether the narrowing that takes place in the third step has to relate to the original surrender or whether it can result from some other new feature, right? Certainly there is discussions of that in the case law. There's no question. I think one of the confusions, again, as we discussed in our brief, one of the problems... That's sort of the issue. Forget about exactly for the moment what your dispute with the patent office is. But in terms of our case law, there does seem to be a question as to whether a narrowing amendment which doesn't relate to the original surrendered subject matter would qualify under the third step, right? There is certainly some, what I believe is dicta case talking about that. There's no question about it. There's a lot of confusing dicta. I think the problem is if you look at the specific cases where all that discussion relates... If we regard that as holding rather than dicta, you've got a problem, right? If that language is holding, we have more of a problem. There's no question about it. In fact, you would lose, wouldn't you? Well, we have two bases. One is the material narrowing, and that was one of the features that we think... The second is, which we think is very important, is the concept of what is the level of estoppel that's applied in a reissue? And we believe that the case law is very clear going back for years in recent case law, is that what is given up when you cancel a claim is the scope of the canceled claim. Not necessarily the scope between the canceled claim and the broadest issued claim. What is given up, what is surrendered, again, it's almost boilerplate in a number of the opinions, that what is given is the scope of the canceled claim. In our case, there's no argument that the claims presented in the reissue are broader than the canceled claims. They're narrowed and they're narrowed in a significant effect. But they're not narrowed with respect to the particular thing you gave up. Is that correct? That is correct. No question about that. That is correct. And that's a critical question, whether that's enough to defeat your claim. That's absolutely correct. And we believe that the case law is very clear that what is given up is the scope of the canceled claim, not the scope, the narrow claim. Well, I mean, I'm not sure what case law you're looking at. I mean, the case I discerned to be the closest on the facts in the case here is Penu. How do you distinguish Penu? Well, again, Penu, I believe Penu specifically points out that what is disavowed is the canceled claim. However... Well, it says that they said the narrowing aspect was not related to the shape of the haptics, but rather to the positioning, and therefore it's problematic. It seems to me very close to the facts we have in this case. Well, if you look at the facts of Penu, what happened in Penu was the narrowing limitations. The claim started at a particular scope, and one of the... Actually, I should pull up the case. I may have to do it off memory. I'm sorry. It was related to the shape of the haptics. The shape of the haptics here, and specifically narrowing features asserted by the patentee related to the snag-resistant means, and particularly the fact that the snag-resistant means were at least three times greater in width than the width of the flexible elements, and the snag-resistant means were substantially coplanar. A couple of people were coplanar. But if you go back to the original claims that were filed, both of those features were part of the claims that were originally canceled. So the features that were alleged to be narrowing in Penu were features of the disavowed claim. And so once you've disavowed those, certainly the fact that there's narrowing... The wording changed. The claim was not substantially narrowed relative to the disavowed claim, and that, we believe, is the significant point. I realize that I'm, I think, out of my time here. We'll give you two minutes for a follow-up. Thank you, Bruce. Ms. Gongola? Good morning. May it please the Court. So what has happened here is Mazda... Let me tell you, I find the MPEP discussion of this to be very confusing, and I found the Board's discussion based on the MPEP to be very confusing. As perhaps you can tell from the earlier argument, the cases seem to set forth a rule that, at least on one interpretation of them, that the narrowing amendment in the third step has to relate to the surrounding subject matter. There seems to be an issue whether that's required by the cases or not required by the cases. But that doesn't seem to be what the Patent Office is saying in the MPEP or in the decision here, which is why I'm confused. Right. We agree with you that this Court's prior case law sets forth a test for the third step of the PANU, the exception. And it requires that the narrowing additions to the claim have to relate to the broadening, to the critical limitation. We agree. Now, as far as the MPEP goes, the MPEP tries to take the language from the Hester case, where this Court elaborated on the scope of Clement. Clement contains language that says, if a reissue claim is broader or as broad in an aspect germane to the rejection, but narrowed in aspects unrelated to the rejection, then the recapture rule applies. So what Hester does is it tries to give some meat to that test and look at narrowing, how the critical limitations might be narrowed, and whether they were overlooked. That's the language that you will find discussed in the MPEP. And the MPEP walks through an example about glass lenses being created by two different methodologies, one using ion implantation with a molten bath, and a second with a plasma stream. And that discussion is related to something different than reissue. What is the meaning of that if-however sentence in the MPEP? Additional inventions, embodiments, species? I just can't follow that. I'm sorry. What the MPEP is doing there is it's trying to explain that if an applicant is directing the reissue claims to an invention, embodiment, or species that was taught in the original specification but not claimed, then a reissue situation would be proper to address that invention, embodiment, or species because it is genuinely overlooked subject matter. Why doesn't that support their position? They say the narrowing amendment doesn't have to relate to the surrendered subject matter and relate to something else that makes it a new invention. That seems to be what they're saying. Well, the language in the MPEP is going at the concept of an error made by an applicant claiming less than he had a right to claim. He forgot his invention. This language doesn't help Mastafasida because Mastafasida is not seeking, through his additional limitations, to reach at a different invention. He's reaching at the same invention that was disclosed in the original claims. He's just trying to go about doing so in a different way. This court in Hester has explained that if you take two patent attorneys and you ask them to draft claims for a particular invention, they're going to do so and arrive at the claims with a slightly different scope. So Mastafasida is seeking basically a do-over, I believe is what Judge Friedman was getting at, of his original prosecution. He's figured out a different way to overcome the prior art using different limitations. But in the process of doing so, Mastafasida is attempting to recapture subject matter because he wants to remove an aspect of the critical limitation that he added into the claims to overcome the art. Okay. I can understand that. But what would be lost? Suppose we were to say, hypothetically, that the case law governs, the case law says you can't narrow the thing by something that was unrelated to the original surrender, and that the last sentence of the MPEP is irrelevant and should be eliminated. What would be lost if we were to say that? The last sentence of the MPEP, if we were to strike it, would not change the fact pattern here at all because Mastafasida But it would be a problem for other cases. I mean, what I'm trying to get at is what's the purpose of this last sentence, and what am I missing when I am confused by it? How does it help? How does it help define the law? How is it consistent with our cases? What is it saying? I think this last sentence is, it doesn't really relate to recapture because what it essentially is saying is if you were to do claiming an invention in a body or species disclosed but overlooked, you wouldn't be in a recapture situation. You would be in a situation that a regular reissue application could help you. So what you're saying is the last sentence isn't directed to the recapture situation. No, it is not, Your Honor. It's directed at something different from that. And perhaps it's not the best placement in the section on recapture to include it here. But nothing would be lost. Well, the difficulty I'm having, so to be clear, when you just look at what people have articulated as this third step in the analysis, the exception to the rule, the words themselves, I mean, you are putting a different gloss on rule. I mean, the words themselves and some of the incarnations are materially narrowed in other respects. That doesn't on its face necessarily compel the gloss that I think you put on it as Judge Dyke articulated, which has to be related to the originally surrendered subject matter, right? Correct. So that is a gloss. Indeed, the words in other respects kind of suggest going in the other direction in the absence of that clear gloss, right? I would agree with that. But we learn about what those words mean, how the court really envisioned them working, when we look at cases where the court has applied the third step. And, Judge Prost, I think you're correct that the closest analogy here is the Panu case. And in that case, the language which the court cited when it talked about the third step is it explained that the narrowing didn't relate to the shape of the haptics, which was the critical limitation, but instead related to the dimensions and positioning of the snag-resistant means, which were subject matter that didn't affect the critical limitation. And, therefore, the court said the exception wasn't triggered. It was no doubt talking about the third step. Maybe even a better recitation of it is in North American Container, where the case there dealt with a plastic bottle where limitations to overcome slightly concave art, the added limitations to generally convex art, drop them out and reissue. And then the court explained when they judged whether the additional limitations that were added into the claim offset the recapture. The court said, and I'm quoting, the reissue claims were not narrowed with respect to the inner wall limitation, thus avoiding the recapture rule. Isn't the real issue on the point you're discussing now, who decides the significance of the narrowing? You say it's the board. And if the board says, well, it's been narrowed, but it hasn't been narrowed enough, that's the end of it. Your opponent, I take it, says, no, when the case comes here, we can make sort of our own independent judgment, weighing those different changes and deciding it's been narrowed enough. Is that basically what seems to be the issue here? Yes, to some degree. The board is judging the invention and the embodiments contained within the invention and the limitations. It's making factual findings. And here at findings, in fact, A15 to the board said, yes, it's been narrowed, but not narrowed enough. The narrowing isn't sufficiently significant to outweigh what you did on the other side. That's correct. It's sort of basically a notion of is it unfair to allow somebody to give up something and then say, okay, we gave it up and that's how we got the patent, but now we want to take that back. That's the basic. It's comparable, I suppose, in a sense, to prosecution history of Stockholm, which you say you can't give something up in the prosecution and then later on when there's litigation saying, oh, but what we gave up is the equivalent of what we got, so therefore it's covered. You can't play fast and loose and take one position in one phase of the litigation and then later on in the same litigation saying, oh, we're now obtaining the opposite position. That's exactly correct. Underlying the recapture rule are notions of equity and prosecution of Stockholm. The goals of prosecution history of Stockholm and recapture are the same. They're trying to prevent an applicant from encroaching on subject matter that it surrendered, and here that is what Mazda-Fazenda is seeking to do. I have a problem with the first paragraph of the NBP2 because that seems to say if you surrendered something, you can never get it back, whereas I understand the rule of the case as to be if you surrender something, you can get some of it back by a reissue, but you can't get the whole thing back. Isn't the statement in that first paragraph too restrictive? Under the cases. Yes, I would say it is too restrictive because it sort of allows, if you narrow with respect to the broadening, it's an offset, and in that instance you might be able to accept yourself out, but this exception has never been triggered in this court's case law, and it should be exceptionally rare. And so because we don't offer an example in the NPP of when it would be triggered, because generally we like to base the examples on decided cases so we wouldn't misdirect applicants. And the NPP, I would agree, could probably stand to have some revision after the clarity that we get from the court in this case as to exactly how this third step would work. But I assume you would say that maybe you can get some of it back, but you can't get back everything that you gave up. Absolutely not. You cannot get back everything you gave up, and this court has explained that there is no unfairness in holding an applicant to the deliberate amendments and arguments it has made in the process of securing a patent. And you can't get it all back even if you narrow it in some unrelated aspect, such as here with the addition of the bus box. That's absolutely correct. You could never get that subject. That wouldn't even be a situation where we would look to the third exception to it all be triggered, because the narrowing is unrelated to the critical limitation in these instances. And where we are here, though, we're talking, we're pretty far removed from the original statutory provision, which is what's at stake here, right, in 251. We've got a long way towards putting glosses on 251, which seem to restrict clear language. Is that a fair characterization? Well, Section 251 provides for the correction of an error, and this court has made clear that an error does not occur when an applicant deliberately gives up subject matter. So the court has created a judicial doctrine to prevent this subject matter recapture, but the hook back into Section 251 is the error requirement that the statute has contained within it. And is the whole rationale that governs this, the notice rationale of potential infringers out there having the right in the first two years of the patent to be able to look at the prosecution history and know what it is their application being, the issue of patent infringement? Yes, it's a concept of notice and fairness to the public that the public is entitled to rely upon the disclosure in the prosecution history for purposes of designing around, launching new research efforts. It also embodies concepts of prosecution history essential, this reliance aspect. And if you take that away from the public, this court has explained in Hester that an unscrupulous patent attorney, and those are the court's words, I don't mean to characterize anyone as unscrupulous, that they could watch the developments in the market, feign an error, come back and reissue, redraft the claims towards a competitor's product, secure reissue, and then go off and sue someone for infringement. In the end, the law needs certainty in its application of the recapture statute. We need to understand what's been surrendered so that facially, looking at a patent and its slight prosecution history, we can judge whether there has been a recapture of subject matter, and if so, impose a rejection so the public can know where the boundaries of the patent reside and what's open for development. So if this court has no further questions, I will relinquish the rest of my time. I ask this court, the facts here are on all fours with five decided cases, Mentor, Hester, Clement, Panu, and North American Container. In all five of those cases, an applicant deleted a critical limitation, added limitations unrelated to it in hopes of triggering the exception, and in all five cases, this court found that the exception was not triggered, recapture applied, and the rejection under section 251 was proper. It is the position of the government that this case is on all fours, and it's a simple matter of applying precedent and affirming the decision of the board. Thank you. Thank you. The quick points that I would like to make is the counsel has suggested that this case is on all fours with a number of cases that she cited, and I don't believe that's the case because what is very different about this case than the others is that there was a materially narrowing of the claims, whereas in every one of the cases cited by the counsel, what really happened, if you look at the underlying patents and the underlying prosecution, is they went back to substantially the same scope as a disavowed claim. And in this case, a bad fact for us, if you will, is that the board found that the reissued claim did not materially narrow the scope of the claim. That's what the board found. We believe that that was a fundamentally flawed determination because the board used the wrong standard. The standard, specifically in denying Mostafa's request for rehearing, the board stated, we found that the narrowing limitations persemed to the same embodiment as the patented claims. And based on this finding, we held that it did not pertain to a patently distinct invention and therefore concluded these narrowing limitations were merely incidental to the essential characteristics of the BJA embodiment and therefore not overlooked, et cetera, et cetera. And we believe that the board's determination of the lack of materials premised on the fact that it was directed at the same embodiment is reversible error. Are there no further questions? Thank you.